ALICE L. BUSCH and FLORENCE LEHMAN, Suing on Their Own Behalf and on Behalf of All Other Similarly Situated Holders of Insured Six Per Cent Participating Trust Certificates, Series A, Dated April 1, 1927, Executed by REALTY FOUNDATION, INC., Appellants, EMANUEL MOSKOWITZ, Intervening Plaintiff, Appellant, *v.* THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Respondent, Impleaded with THE CONTINENTAL BANK & TRUST COMPANY OF NEW YORK, Defendant.

First Department, April 1, 1938.

*Lester Grossman* of counsel [*Henry B. Wilson* with him on the brief], for the appellants.

*Walter H. Pollak* of counsel [*Louis S. Weiss* and *Mordecai Rochlin* with him on the brief; *Cohen, Cole, Weiss & Wharton*, attorneys], for the respondent.

*Henry N. Rapaport* of counsel [*Robert S. Garson* with him on the brief; *Rapaport Brothers*, attorneys], for Robert Benenson, M. Murray Peshkin and Lillian Peshkin, as *amici curiæ*.

O'MALLEY, J.   The chief question presented is whether plaintiffs, participating trust certificate holders, are entitled to enforce the obligation of the defendant The Metropolitan Casualty Insurance Company of New York (hereinafter called " insurer "), insuring that the trust fund would always have sufficient assets to pay principal and interest at maturity.   Incidentally involved is the right of the trustee, either under the trust indenture or in a plan of reorganization, to sell this obligation as part of the trust fund, these plaintiffs being non-assenting certificate holders.

The Realty Foundation, Inc., issued a series of certificates aggregating $1,000,000, collaterally secured by various stocks, bonds and real estate securities pledged with the Central Mercantile Bank & Trust Company, as trustee, now succeeded by the defendant The Continental Bank & Trust Company of New York.

Each certificate bore an indorsement signed by the defendant, the insurer, certifying that it had irrevocably and unconditionally insured "*for the benefit of the holders* of the within Certificate, that the Trust Fund   *   *   *   will always be equal to the principal amount of the Certificates outstanding and will produce in cash an amount sufficient to pay the interest and principal   *   *   *, and that   *   *   *   it is obligated to pay any deficit within sixty days of its occurrence." (Italics ours.)   The trust indenture, executed before the issuance of the certificates, contained recitals to like effect concerning the insured, and provided that all payments made by the insured were to " be paid to the Trustee as the agent

and for the benefit of the Certificate holders *and upon such payment* shall become part of the Trust Fund." (Italics ours.)

The plaintiffs herein acquired their certificates before any default occurred. The Realty Foundation, Inc., was adjudicated a bankrupt April 18, 1933, but the interest warrants attached to the certificates were paid to April 1, 1935. Since then no interest has been paid.

The trustee, after formal written demand made upon it for the payment of interest due April 1, 1935, advised that there were no funds deposited, and the insurer, upon demand, refused to make good that deficit.

After the adjudication in bankruptcy of the obligor, an action was brought by another certificate holder, not here a party, in a representative capacity to compel an accounting on the part of the trustee. The insurer was not a party thereto. Summary judgment was granted in favor of the plaintiff. A bondholders' committee intervened and proposed a plan of readjustment, which was approved by the court upon the report of a referee. The present plaintiffs did not appear in the action and did not receive actual notice of the proceedings.

Under this readjustment plan there were sold at public auction all of the assets of the trust fund. The purchaser was Foundation Properties, Inc., a corporation formed by the bondholders' committee. The purchase price was the sum of $327,000. This left in the hands of the trustee a total of approximately $447,000, there being about $120,000 in cash in the fund. A deficit of approximately $553,000 and accrued interest resulted.

In addition to turning over to the purchaser the securities in the trust fund, the trustee executed an assignment of any and all rights which it had against the insurer, and the purchaser, upon receipt of this assignment, executed a release to the insurer. These plaintiffs and numerous other certificate holders did not authorize the trustee's acts in this respect and never deposited their certificates with the bondholders' committee or authorized the purchaser to execute the release in question.

We are of opinion that neither under the readjustment plan nor under the trust indenture were these plaintiffs and other non-depositing certificate holders bound by the purported transfer of rights against the insurer nor by the release given. The readjustment plan recited that the parties thereto were the committee and the bearers of certificates " becoming parties thereto." It further provided that, if the plan went through, the committee would release the insurer " in so far as all Trust Certificates deposited with the Committee at the time of the consummation of the Readjust-

ment Plan or thereafter acquired or controlled " are concerned. It also contains specific provision that holders of certificates would become parties to the agreement by the deposit thereof and that certificate holders would become bound if they had deposited their certificates and accepted the plan. A time limit for participation of the depositors was also provided. The referee in reporting to the court on this plan stated that all bondholders were left free to accept or reject its benefits.

After the confirmation of the referee's report, a letter sent out by the committee stated that the plan was designed for the benefit of holders of certificates who should have deposited the same with the committee prior to the consummation; also, that there was contemplated, in accordance with the agreement with the insurer, " The release of the insurer from all liability upon or in respect of *deposited Trust Certificates.*" (Italics ours.)

In the light of these provisions it is our opinion that the plan was to be binding only upon depositing certificate holders, and that it was only as to them that the transfer of rights against the insurer on its release would be binding. Argument that a contrary conclusion is required is predicated upon article VII of the plan (Details of Plan), which provides as follows: " Without limitation of the foregoing, it is contemplated that all of the assets comprising the trust estate, including all claims then existing or which may thereafter arise in favor of the Trustee, as representative of the holders of Trust Certificates, by reason of any obligation of the Insurer, shall be sold at public sale, and that the Corporation shall bid therefor up to such amount as may be approved by it and by the Committee."

This language, if in favor of the defendants, is limited, however, by a following paragraph of the same article, which provides that, in the event the corporation became the purchaser of any claims against the insurer, the committee would cause the insurer to be released from all such claims " in so far as all Trust Certificates then deposited with the Committee or thereafter acquired or controlled * * * are concerned, from all liability upon or with respect thereto." Read together, these two paragraphs lead to but one conclusion, that the rights of non-depositing participation certificate holders did not even purport to be affected by this plan. To the same effect was article VI of the plan, headed " Agreement Between Committee and Insurer." ǀ

Under the trust agreement likewise there seems to have been no power in the trustee to sell the obligation of the insurer to make good any deficit in the fund. It is true that, in the event of a default, the trustee, with the consent of the insurer, was authorized

to sell and to convert into money all or any part of the trust fund. We are of opinion, however, that this obligation is not to be deemed a part of the trust fund. Although there are many references in the trust indenture to the trust fund, there is no specific definition thereof contained in the instrument. On the other hand, the securities constituting all or any part of the fund are always specifically mentioned. It seems to us, therefore, that the obligation of the insurer cannot be said to be security constituting a part of the fund.

It is further to be noted that the insurer's obligation was expressly " for the benefit of the holders of the Certificates," and was a guaranty of the sufficiency of the trust fund. Further, it was provided, as already noted, that *payments* made by the insurer would become part of the fund. Hence, the obligation to pay would not be a part thereof.

For the reason stated, we are of opinion that non-depositing certificate holders were not bound by the assignment to the purchaser at the sale of the obligation of the insurer, nor by the release given to the latter by the purchaser. The trustee, having refused to enforce the provisions against the insurer, these plaintiffs were entitled to commence their representative action on their own behalf.

It is contended, however, that the original plaintiffs, Busch and Lehman, are foreclosed by virtue of a summary judgment of the Municipal Court in an action brought by them individually to recover on the interest coupons attached to their certificates. In our view this judgment is not *res judicata* of the present issue. The answer on the part of the insurer in the Municipal Court was to the effect that its only obligation was " to pay to the Trustee." The judgment, therefore, would seem to bar the original plaintiffs herein only with respect to individual causes of action in the first instance against the insurer. The plaintiffs here sue in a representative capacity. Moreover, the intervening plaintiff was not a party to the action in the Municipal Court. While other defenses were allegedly raised by affidavits, it nowhere appears upon what theory the court granted judgment.

It follows, therefore, that the orders and judgment appealed from should be reversed, with costs, and plaintiffs' motion for summary judgment granted, and the cross-motion of the defendant The Metropolitan Casualty Insurance Company of New York for summary judgment denied.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Orders and judgment unanimously reversed, with costs, and plaintiffs' motion for summary judgment granted, and cross-motion of the defendant The Metropolitan Casualty Insurance Company of New York for summary judgment denied.